ANTHONY SMITH ET AL
vs.
JOHN CHANEY.          DECEMBER TERM, 1847.

[DEFICIENCY IN LAND SOLD.]

A PURCHASE of land containing 181 acres, more or less, at so much per acre, was made in 1841, and at the same time the vendor agreed in writing to make deduction out of the purchase money for so much of the land sold, "where peaceable possession could not be given." The vendor, subsequently executed a deed to the vendee for the land, describing it by metes and bounds, course and distance, and as containing 181 acres, more or less, and put the latter in possession of the whole. This deed contained no covenants. HELD—

That the stipulation on the part of the vendor was fully discharged by putting the vendee in possession of the land, and the latter could not claim an abatement of the purchase money for a part of this land, of which he, *subsequently*, permitted himself to be dispossessed.

The deed being subsequent in date to the contract for an allowance in case of deficiency must be considered as taking the place of all previous agreements on the subject, and as containing the full and entire contract of the parties.

A vendor selling in good faith is not responsible for the goodness of his title beyond the extent of the covenants in his deed.

[The facts of this case are fully stated in the opinion of the Chancellor.]

THE CHANCELLOR:

This case is brought before the court upon a motion to dissolve the injunction, and the solicitors of the parties have filed written arguments in support of, and in opposition to, the motion.

The bill was filed on the 1st of December, in the year 1845, and alleges, in substance, that on or about the 1st of January, 1841, the complainants purchased of the defendants, Chaney and wife, a parcel of land of which they alleged themselves to be in possession, containing 181 acres and ⅞ of an acre, at the price of $ 45 per acre, the purchase money amounting to $ 8,184 37, for which they gave their joint single bills to Chaney, who delivered to the complainant, Anthony, all the land except eight and seven-eighths of an acre, and agreed, in writing, to deduct from the purchase money the amount of said deficiency, (the agreement being filed as an exhibit with the bill,) and that the defendant and his wife executed to the complainant, Anthony, a deed for the land, which deed is also exhibited.

That the whole purchase money has been paid, except the last single bill for $ 3,407 87½, and upon that several payments have been made, amounting to $ 1,500, of which the sum of $ 400 was paid on the 29th of April, 1844. That in May, 1845, a judgment was obtained on this single bill against the complainants, without giving credit for the last payment of $ 400, or the deficiency in the number of acres, in pursuance of the agreement, and the complainants are informed, and believe, that the defendant, Chaney, is about to enforce, by execution, the payment of the whole amount of the judgment, though they insist he never was in possession of the said eight and seven-eighths of an acre, nor had title thereto, the same being held and claimed by other persons.

Exhibits were filed with the bill, showing payments for which credits were claimed, all of which were credited upon

the judgment, except that for $400 on the 29th of April, 1844, and for the alleged deficiency in the number of acres.

The agreement referred to in the bill bound the defendant, Chaney, to pay to Smith, "such sum or sums of money that might arise out of land sold him, where peaceable possession could not be given, the said, with interest, to be deducted from his bond of $ 3,407 87, bearing date the 1st of January, 1841."

The deed from Chaney and his wife, which was executed on the 7th of May, 1841, conveyed to the complainant, Smith, for the consideration mentioned, being $8,184 37, the parcel of land spoken of in the bill describing it by metes and bounds, course and distance, and as containing 181 and $\frac{7}{8}$ acres, more or less. The deed conveys the land in fee, but contains no covenants of any description.

Upon this bill and the exhibits, the late Chancellor ordered an injunction.

The answer avers that all the land sold was the property of the defendant at the time of the sale, and in his possession, and that no other person had any title to any part thereof, or had made any claim thereto, or had possession thereof. The answer also speaks of an agreement to have the land surveyed, and a survey in pursuance of such agreement, in the winter or spring of 1841, when it was found to contain the number of acres mentioned in the deed filed with the bill. That the complainants were shown the lines of the land, and it was well understood that the land was sold according to those lines by which it was described in the deed, and in conformity with which the defendant had held, and the complainant then held, possession, and if he is not now in possession of all the land it is because he has allowed others to encroach upon his just title and the possession he received from the defendant. The institution of the suit at law and the recovery of the judgment are admitted, as is also the right of the complainants to the credit endorsed upon the judgment, and also to be credited with the sum of $400 paid on the 29th of April, 1844. Their right, however, to any credit on account of deficiency in the number of acres is disputed, and that is the only question now to be decided.

Upon carefully comparing the bill with the answer, I am of opinion the equity is sworn away and the injunction must be dissolved, except as to the $400, to be credited as of the 29th of April, 1844.

It must be assumed that the land sold is correctly described in the deed, and the answer expressly states that the defendant had held, and the complainant then (at the date of its execution) held possession according to that description, and that if he does not now so hold, it is because he has subsequently suffered other persons to encroach upon his just title, and the possession he received from the defendant.

The agreement filed with the bill stipulated for an abatement in the purchase money, in case peaceable possession could not be given of all the land sold, but there was no agreement for an abatement of the purchase money if the purchaser, after being put in quiet possession, permitted others to interfere with such possession.

The stipulation on the part of the vendor would be performed by putting the vendee in peaceable possession of the property, and this he expressly says he did do, but he was under no obligation, as I apprehend, not only to place him in possession, but to defend and maintain that possession thereafter. After being fairly placed in peaceable possession of the property, it was the business of the purchaser, and not of the vendor, to vindicate his right thereto.

Some stress is laid by the counsel of the complainant upon the circumstance that the defendant suffered the bill to remain unanswered from December, 1845, to October, 1847, which is regarded as amounting to something like an admission of the merits of the complainant's case. But the defendant, it must be remembered, is a non-resident, living in a distant state, which certainly furnishes some apology for the delay on his part, and it may be that he did not choose to answer the bill until he could come to Maryland for the purpose. His affidavit to the answer shows him to have been in this state at that time.

But if delay in the assertion of one's rights is to be availed

of as an argument against their existence, it seems to me that the weapon may be used with more efficacy against the complainants than in their favor.

The bill alleges that they bought this land in January, 1841, and that the possession of the whole was delivered, except the 8 and $\frac{7}{8}$ acres, of which, of course, according to the allegation of the bill, possession never was delivered, and yet it is not until December, 1845, that they exhibited their bill to be relieved in respect of the alleged deficiency. Nor is this all. The entire amount for which the first single bill was given was paid, and payments made on account of the other of the obligations given for the purchase money of this land, the last payment being as late as April, 1844, without, so far as this record informs us, any intimation or complaint that the number of acres was deficient. Now it seems to me the complainants, without waiting for the judgment at law against them, ought, at an earlier date, and within a reasonable time after discovering the alleged deficiency in the number of acres, to have insisted upon a credit in respect thereof, and that there is in this delay of nearly five years, far more appearance of acquiescence on their part than can be inferred against a non-resident defendant for omitting to answer a bill for less than two years.

There is, moreover, another reason of great force, in my judgment, against allowing a credit for this alleged deficiency in the number of acres.

The deed, as we have seen, which was executed on the 7th of May, 1841, describes the land by course and distance, and as containing the number of acres spoken of in the bill. It is dated subsequently to the date of the contract of purchase, and of the agreement for an allowance in case of deficiency in the quantity of acres. This deed must be understood as taking the place of all previous agreements upon the subject, and as containing the full and entire contract of the parties, and yet we do not find in it any covenant in regard to the title of the vendor. It seems to me that if the purchaser had designed to guard himself against an apprehended deficiency in the number of acres, or any other defect in the title, to the whole or any

part of the land, he should have taken care to have had proper covenants inserted in the deed; the rule being that a vendor selling in good faith is not responsible for the goodness of his title beyond the extent of the covenants in his deed. *Gouverneur* vs. *Elmendorf*, 5 *Johns. Ch. Rep.*, 79.

For these reasons, I am of opinion that the injunction must be dissolved, except as to the sum of $400, which the answer admits to be a proper credit.

A. RANDALL, for Complainants.
W. H. TUCK, for Defendant.